**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES TODD KELLEY, | : |
| | : |
| Plaintiff, | : **OPINION** |
| | : |
| v. | : Civ. No. 03-4817 (WHW) |
| | : |
| EDISON TOWNSHIP, MIDDLESEX | : |
| COUNTY PROSECUTOR'S OFFICE, DET. | : |
| FRED LACIK, II, LT. MICHAEL PALKO, | : |
| DET. JEFF ABRAMS, SGT. CHRIS | : |
| ENGRAM, PTLM. JEFF DIAKUNCZAK, | : |
| PTLM. BRIAN MIECKOWSKI, | : |
| | : |
| Defendants. | : |
| | : |
| DET. JEFF ABRAMS, et al. | : |
| | : |
| Third Party Plaintiff, | : |
| | : |
| v. | : |
| | : |
| STATE OF NEW JERSEY, | : |
| | : |
| Third Party Defendant. | : |
| | : |

**Walls, District Judge**

  This Opinion addresses three motions as they deal with related issues.  First, third party

defendant State of New Jersey moves to dismiss the Third Party Complaint.  Second, Edison

Township moves for partial summary judgment dismissing all the vicarious liability claims

against it arising from the conduct of defendant/third party plaintiff Det. Jeff Abrams.  Third,

**FOR PUBLICATION**

Abrams cross-moves for summary judgment on the Third Party Complaint.  The motions are

decided without oral argument pursuant to Fed. R. Civ. P. 78.

**FACTS AND PROCEDURAL BACKGROUND**

On October 9, 2003, plaintiff James Todd Kelley filed a Complaint, later amended on

July 1, 2004, alleging both federal and state law claims against Edison Township, Middlesex

County Prosecutor's Office ("MCPO"), Det. Fred Lacik, II, Lt. Michael Palko, Det. Jeff Abrams,

Sgt. Chris Engram, Ptlm. Jeff Diakunczak, and Ptlm. Brian Mieckowski.  His claims arise from

the following undisputed facts:[1]  The MCPO has an investigative arm that includes a narcotics

task force.  The task force is populated by investigators, detectives and agents who possess the

same police powers as municipal police officers but with county-wide jurisdiction.  The members

of the task force are solicited from municipal and other law enforcement agencies.  Participating

agencies loan one or more police officers to the task force for up to one year.  In return, the

MCPO reimburses the agencies for part of that officer's salary.  The task force is organized into

three squads, each with six agents and one sergeant.  At any given time, between five and ten

members of the task force are employees on loan from other agencies.  While the loaning agency

selects which officers to send, the task force commander retains the right to return any loaned

officer and the right to refuse the renewed assignment of any particular officer.

Abrams, a police officer with the Edison Police Department, was first assigned to the task

force in June 2001.  His assignment was renewed in September 2002.  For the 2002-2003 year,

_____

[1] The only party that opposed Edison Township's motion for partial summary judgment is
the State of New Jersey and it did not dispute any of the facts in Edison's statement of facts.

FOR PUBLICATION

the MCPO paid the Edison Police Department $20,000 for Abrams's assignment.  During 2002,
Abrams was assigned to the task force on a full-time basis.  His day-to-day control and
supervision was through his immediate supervisor, Engram, a permanent member of the task
force.  As a squad sergeant, Engram oversaw squad members who were either hired by the
MCPO or loaned to the task force.

In October 2002, the commander of the task force was Captain Jeff Greczyn and Sgt.
Paglione was the deputy commander.  On the morning of October 30, 2002, Abrams received
information from a confidential informant that a James Hemenway would sell five ounces of
cocaine that evening.  As the case agent for the investigation, Abrams was responsible for
coordinating the investigation, getting any warrants, and preparing any written reports.  As the
task force does not have any marked patrol cars or jail, it is standard protocol for the task force to
contact local law enforcement for back up and support when operating in a particular
municipality.  Abrams and Engram contacted the Bay Shore Narcotics Task Force ("BSNTF")
because Hemenway was located in Monmouth County.

Abrams and Engram met with the confidential informant near the Ramada Inn in Edison
that afternoon and confirmed that the sale would take place at the Ramada.  An officer from
BSNTF was present for that meeting, but was not included in the conversation.  The informant
described Hemenway as a white male, age 25 to 30, medium to heavy-set build, with blondish-
brown hair.  The informant also told Abrams and Engram that the deal would happen between
8:30 p.m. and 10:30 p.m. and that Hemenway would be driving a white minivan.

**FOR PUBLICATION**

Because the sale was to take place in Edison, Abrams contacted the Edison Police Department for back up and support.  Abrams and Engram then formulated a tactical plan to arrest Hemenway.  The officers were split up in several unmarked police cars which were located in different areas of the Ramada Inn parking lot.  The officers were instructed to arrest Hemenway on sight.  Control over the investigation and supervision of Abrams remained with Engram throughout the process.

At the Ramada Inn, Engram drove one vehicle and the BSNTF officer and the informant were with him.  The informant was present to identify the van and Hemenway.  While the police were monitoring the Ramada Inn, plaintiff Kelley drove into the Ramada Inn parking lot in a white minivan, and he appeared to match the description of Hemenway.  When Kelley arrived, the informant did not say that he was not the target.   Abrams approached Kelley's vehicle and Kelley sped away.  The officers pursued him and extricated him from the van.  Upon seeing Kelley being taken out of the van, Engram first realized that Kelley was not Hemenway.  Kelley was arrested and taken to the Edison Township Police Department where a criminal complaint was filed against him and a summons issued.  The complaint was later dismissed.

Plaintiff complains that his rights were violated under to 42 U.S.C. § 1983, alleging false arrest, false imprisonment, excessive use of force, and malicious prosecution.  His state law claims include intentional and negligent infliction of emotional distress, assault and battery, malicious prosecution, and false arrest and imprisonment.  He is suing Edison Township under the doctrine of respondeat superior for the tortious conduct of the individual defendants.

FOR PUBLICATION

After the Complaint was filed, on March 29, 2004, Middlesex County Counsel sent a letter to the Attorney General for the State of New Jersey requesting representation for Abrams. By letter dated April 7, 2004, the request was denied.  On July 22, 2004, after the MCPO and Engram were added as defendants, Middlesex County Counsel requested representation for the MCPO from the Attorney General.  Before the Attorney General responded, the MCPO, Engram and Abrams filed an Answer, Cross-claim and Third Party Complaint against the State of New Jersey.  The Third Party Complaint states claims for contribution, indemnification, and requests that the State of New Jersey defend and indemnify the MCPO, Engram and Abrams.  On September 8, 2004, the Attorney General informed Middlesex County Counsel that representation would be provided to the MCPO and Engram but not Abrams.

STANDARDS OF REVIEW

The motions addressed here implicate the standards of review for both 12(b)(6) motions to dismiss and summary judgment.  On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party.  Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).  The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions

FOR PUBLICATION

cast in the form of factual allegation.  Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977).

Moreover, the claimant must set forth sufficient information to outline the elements of his claims

or to permit inferences to be drawn that these elements exist.  Fed. R. Civ. P. 8(a)(2);  Conley v.

Gibson, 355 U.S. 41, 45-46 (1957).  The Court may consider the allegations of the complaint, as

well as documents attached to or specifically referenced in the complaint, and matters of public

record.  Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see

also 5A WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990).

        "A 'document integral to or explicitly relied on in the complaint' may be considered

'without converting the motion [to dismiss] into one for summary judgment.'" Mele v. Federal

Reserve Bank of N.Y., 359 F.3d 251, 255 n.5 (3d Cir. 2004) (citing In re Burlington Coat Factory

Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  "Plaintiffs cannot prevent a court from looking

at the texts of the documents on which its claim is based by failing to attach or explicitly cite

them." Id.

        Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c). A factual dispute between the parties will not defeat a motion for summary

judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the

non-movant and it is material if, under the substantive law, it would affect the outcome of the

suit. See id. at 248. The moving party must show that if the evidentiary material of record were

FOR PUBLICATION

reduced to admissible evidence in court, it would be insufficient to permit the non-moving party

to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts in question."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party

must set forth specific facts showing a genuine issue for trial and may not rest upon the mere

allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At

the summary judgment stage the court's function is not to weigh the evidence and determine the

truth of the matter, but rather to determine whether there is a genuine issue for trial. See

Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the

light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

## DISCUSSION

In response to the State of New Jersey's  motion to dismiss the Third Party Complaint,

Edison Township filed its own motion for partial summary judgment addressing the vicarious

liability claims against it.  Edison Township's brief serves as both support for its motion, its

opposition to the State's motion, and support for Abrams's cross-motion.  The motions are

related in that they all deal with which party, if any, is vicariously liable for Abrams conduct, and

responsible for the costs of his defense.

## I.    Eleventh Amendment

The State of New Jersey first argues that the Third Party Complaint must be dismissed in

its entirety because the claims are barred by the Eleventh Amendment.  It is well established that

FOR PUBLICATION

the Eleventh Amendment generally prohibits federal courts from hearing suits brought by private citizens against a state, unless the state has consented to jurisdiction.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) (extending Eleventh Amendment immunity to suits by citizens of the same state); Hans v. Louisiana, 134 U.S. 1, 15 (1890); see also Kimel v. Florida Board of Regents, et. al., 528 U.S. 62, 72 (2000) ("we have made clear that the Constitution does not provide for federal jurisdiction over suits against non-consenting states").  The Eleventh Amendment provides:

> "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State."

The Supreme Court has stated that the Eleventh Amendment seeks to protect "the vital role of the doctrine of sovereign immunity in our federal system,"  Pennhurst Stated School and Hospital v. Halderman, 465 U.S. 89, 99 (1985), and that suits against unconsenting states "[were] not contemplated by the Constitution when establishing the judicial power of the United States." Hans v. Louisiana, 134 U.S. at 15.

Defendants bear the burden of proving that they are entitled to sovereign immunity. See Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001). This broad immunity "applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 765 (2002).  "Eleventh Amendment immunity will not be available to a state merely by virtue of the fact that such state is named formally as a defendant."  Chisolm, 275 F.3d at 322.  "[F]or Eleventh Amendment immunity to apply, a court must determine that a state is a real party-in-interest."  Id.  There are

-8-

FOR PUBLICATION

two situations in which the state is considered the real party in interest.  First, whenever "the

judgment sought would expend itself on the public treasury or domain, or interfere with the

public administration."  College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,

948 F. Supp. 400, 409 (D.N.J. 1996) (quoting Pennhurst, 465 U.S. at 101, n.11).  Second, "if the

effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'"

Id.  As the Third Party Complaint seeks money from the State of New Jersey to defend and

indemnify Abrams and in the event damages are assessed against him, the money to satisfy these

requests would be taken from state funds.  This situation fits squarely within the first category,

making the State of New Jersey a real party in interest.

     "There are only three narrowly circumscribed exceptions to Eleventh Amendment

immunity: (1) abrogation by Act of Congress, (2) waiver by state consent to suit; and (3) suits

against individual state officials for prospective relief to remedy an ongoing violation of federal

law."  M.A. ex rel. E.S. v. State-Operated School Dist. of City of Newark, 344 F.3d 335, 345 (3d

Cir. 2003).  Edison Township and Abrams argue that this last exception was triggered by the

Attorney General's denial of Abrams's request for representation.  The New Jersey Tort Claims

Act ("NJTCA") provides: "Except as provided in section 2 hereof, the Attorney General shall,

upon a request of an employee or former employee of the State, provide for the defense of any

action brought against such State employee or former State employee on account of an act or

omission in the scope of his employment."  N.J.S.A. 59:10A-1 (footnote omitted).  The NJTCA

further reads "[i]f pursuant to the provisions of P.L.1972, c. 48 (C. 59:10A-1 et seq.) the

Attorney General provides for the defense of an employee or former employee, the State shall

FOR PUBLICATION

provide indemnification for the State employee." N.J.S.A. 59:10-1.  These defense and

indemnification obligations extend to the defense of federal claims as well.  Petition for Review

of Opinion 552,  102 N.J. 194, 200 (N.J. 1986).  Defendants argue that these statutory obligations

are a constitutionally protected property right and the absence of a hearing after the denial of such

right amounts to a due process violation and an ongoing harm.  See Hall v. California Dept. of

Corrections, 835 F. Supp. 522, 526 (N.D.Cal. 1993).  The State of New Jersey counters that any

wrongdoing was not ongoing nor did it involve a violation of a federal right.

No New Jersey court has interpreted the NJTCA as granting a federal constitutional right

to defense and indemnification or that the denial of legal representation without a pre-deprivation

hearing amounts to a due process violation.  The case relied upon by Edison and Abrams

involved a section 1983 claim brought by a correctional officer against the department of

corrections and its officials for failing to defend him in a separate action brought by an inmate

against him.  Hall, 835 F. Supp. 522.  The defendants moved to dismiss on the grounds that the

plaintiff failed to state a claim under section 1983 because he did not identify the deprivation of a

constitutional right and he was not denied due process.  The Hall court found that the California

statute directing a public entity to provide legal representation to a public employee being sued

because of an act that occurred within the scope of employment amounted to a constitutionally

protected property interest.  However, the Hall court dismissed the complaint because there were

adequate post-deprivation procedures available such that the plaintiff was not denied due process

of law.  Id. at 527-29.  The post-deprivation procedures available to the plaintiff in Hall are

-10-

**FOR PUBLICATION**

similar to the statutory remedies available to Abrams here if he were considered a state

employee:

> If the Attorney General refuses to provide for the defense of a State employee as required by the provisions of P.L.1972, c. 48 (C. 59:10A-1 et seq.), the employee or former employee of the State shall be entitled to indemnification from the State if he establishes that the act or omission upon which the claim or judgment was based occurred within the scope of his employment as an employee of the State and the State fails to establish that he acted or failed to act because of actual fraud, actual malice or willful misconduct.

> If the State employee establishes that he was entitled to a defense under the provisions of this chapter, the State shall pay or reimburse him for any bona fide settlement agreements entered into by the employee, and shall pay or reimburse him for any judgments entered against the employee, and shall pay or reimburse him for all costs of defending the action, including reasonable counsel fees and expenses, together with costs of appeal, if any.

N.J.S.A. 59:10-2.  In addition, Abrams had forty-five days in which to appeal the Attorney

General's decision to the New Jersey Superior Court, Appellate Division, but he did not do so.

See N.J. Court Rule  2:4-1 ("appeals from final decisions or actions of state administrative

agencies or officers . . . shall be taken within 45 days from the date of service of the decision or

notice of the action taken."); State Health Planning and Coordinating Council v. Hyland, 161

N.J.Super. 468 (N.J.Super.A.D. 1978) (holding that appeal from a decision of the Attorney

General denying legal representation was before the Appellate Division as of right to review the

final decision of a state officer).  While Edison and Abrams argue that Abrams may still appeal

the decision to the Appellate Division because the statutory post-deprivation procedure is

phrased in terms of claims or judgments, it is not necessary for the Court to determine whether

this remedy remains available to Abrams.  That will be an issue for the Appellate Division to

decide.

-11-

**FOR PUBLICATION**

Other than simply citing <u>Hall</u>, Edison Township and Abrams offer no reason why the Court should declare that NJTCA provides public employees with a constitutionally protected property interest.  Furthermore, <u>Hall</u> itself is distinguishable from this case in that the <u>Hall</u> plaintiff actually alleged a violation of section 1983 because of the denial of legal representation. It is also noteworthy that Abrams's Third Party Complaint neither alleges an ongoing violation of federal law nor does it seek an injunction of such conduct or a declaration that the conduct is unconstitutional.  Rather, after alleging that the State of New Jersey has a duty to defend and indemnify him, the Third Party Complaint reads "[w]herefore, the Defendants/Third Party Plaintiffs . . . demand judgment against Third Party Defendant, State of New Jersey, for all *damages* pursuant to the aforementioned doctrine, along with indemnification, including a defense, and all attorney's fees and costs of suit."  (Third Party Compl. at Third Count ¶ 3) (emphasis added).  Moreover, that the NJTCA provides a remedial mechanism similar to that available in <u>Hall</u> weakens Edison and Abrams's argument that a due process violation has occurred.

Because the Court finds that Abrams's claims do not fall within the exception to Eleventh Amendment immunity for an ongoing violation of federal law, the claims asserted against the State of New Jersey in the Third Party Complaint are barred by the Eleventh Amendment.  In light of this finding, the Court need not consider the other arguments offered by the State in support of dismissal.  The State of New Jersey's motion to dismiss the Third Party Complaint is granted and Abrams's cross-motion for summary judgment on the Third Party Complaint is denied.  Edison and Abrams request that dismissal be without prejudice so that Abrams may

FOR PUBLICATION

refile his claims in state court. The Court will honor this request so that Abrams may pursue any

of the state law remedies available to him in state court.

## II.   Vicarious Liability of Edison Township

Edison Township moves for partial summary judgment on all vicarious liability claims

asserted against it based on Abrams's conduct.  As for plaintiff's federal claims under section

1983, the Supreme Court has held that "a municipality cannot be held liable under § 1983 on a

respondeat superior theory."  Monell v. Department of Social Services of City of New York,  436

U.S. 658, 691, 98 S.Ct. 2018, 2036-38 (1978).  As that is exactly the theory under which plaintiff

alleges Edison Township is liable for Abrams's conduct, plaintiff's vicarious liability claims

against Edison for Abrams's conduct that violated section 1983 must be dismissed.

The more difficult issue is whether plaintiff's vicarious liability state law claims survive

against Edison Township.  In Wright v. State of New Jersey, 169 N.J. 422 (2001), the New

Jersey Supreme Court held that the State may be vicariously liable for the tortious conduct of the

Somerset County Prosecutor's Office prosecutors and investigative subordinates when they act in

their law enforcement/investigatory capacity.  Id. at 452.  In its consideration of the vicarious

liability issue, the Wright court decided that the traditional control test was not applicable to the

circumstances:

> We must decide whether the State should be held vicariously liable for the actions
> of county prosecutors and their subordinates performed during the investigation,
> arrest, and prosecution of Isaac Wright.  First, we note that we are not persuaded
> that the control test is dispositive or persuasive in determining that issue.  In
> Dunne, supra, 69 N.J. at 248, 353 A.2d 508, we explained that county
> prosecutors' detectives possess a unique hybrid status with respect to their
> functions and responsibilities related to both the county and the State . . . . In our
> view, because county prosecutors and their subordinates have such a unique

-13-

**FOR PUBLICATION**

> relationship with both the State and the county, the degree of control criterion is
> not adequate to fairly resolve the issue of vicarious liability.  Instead, we rely on
> statutory interpretation and relevant case law related to the vicarious liability
> provisions of the T[ort] C[laims] A[ct] to decide the issue.

Id. at 449-50 (internal citation omitted).  The Wright court more fully explained the hybrid status

of prosecutors and their subordinates as follows:

> It is well established that when county prosecutors execute their sworn duties to
> enforce the law by making use of all the tools lawfully available to them to
> combat crime, they act as agents of the State.  On the other hand, when county
> prosecutors are called upon to perform administrative tasks unrelated to their
> strictly prosecutorial functions, such as a decision whether to promote an
> investigator, the county prosecutor in effect acts on behalf of the county that is the
> situs of his or her office.

Id. at 450 (quoting Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir. 1996)).  In lieu of utilizing the

control test, the Wright court reviewed the statutory provisions of the NJTCA and cases finding

that county prosecutors at times act as agents of the State, and determined that the legislature did

not intend to exclude "agents" from the definition of "employee" for purposes of vicarious

liability under the NJTCA.  Id. at 450-51.

The Court need not decide whether a municipal police officer on-loan to a county task

force acts as an agent of the State for purposes of determining vicarious liability because the

circumstances that caused the Wright court to veer away from the control test are not present

here.  A municipal police officer working on a county prosecutor's task force does not possess

the same type of hybrid status that a county prosecutor has by virtue of his position alone.  As the

Wright court recognized, county prosecutors are considered agents of the State because of the

constitutional and statutory scheme under which they operate.  Id. at 437-42.  The county

prosecutor's office is constitutionally established and the Attorney General has the authority to

-14-

**FOR PUBLICATION**

supersede a county prosecutor in an investigation or prosecution.  Id.  Given this basis for

concluding that county prosecutors possess a hybrid status, it is not clear that the New Jersey

Supreme Court would also abandon the traditional approach to vicarious liability when the

hybrid nature of an employee is not derived from legal authority, but rather by virtue of his

participation in a county-wide task force.  Under these circumstances, the Court will evaluate

Edison's vicarious liability under the more traditional approach.

      Edison argues that it is not liable under the control test articulated by the New Jersey

Supreme Court in Galvao v. G.R. Robert Construction Co., 179 N.J. 462 (2004).  The State

contends that the Galvao test is neither applicable to public entities nor is it legally or factually

similar to the facts here.  The Galvao plaintiff was injured while working on a project run by

George Harms Construction Company ("GHCC") because of a defective rebar cage that had been

constructed by G.R. Robert Construction Company's ("Robert") employees.  At the time of the

accident, George Harms Excavating Company ("Excavating") was listed on the plaintiff's W-2

form as the payor of plaintiff's salary.  Robert and Excavating were wholly-owned subsidiaries of

GHCC, but they served only as payroll companies that supplied employees to GHCC and were

reimbursed by GHCC for their payroll expenses.  The plaintiff sued Robert under the theory of

respondeat superior for the negligent construction of the cage.  The court referred to Robert as

the general employer and GHCC as the special employer.  The issue before the Galvao court was

how to determine when a general employer is vicariously liable for injuries caused by the

negligence of a borrowed, or special employee, engaged in the business of a special employer.

Id. at 464.  The court noted that its decision in Volb v. G.E. Capital Corp., 139 N.J. 110 (1995),

**FOR PUBLICATION**

left unresolved whether the control test or the business furtherance test should be applied in

making such determinations.  The <u>Galvao</u> court ended the uncertainty by adopting a two-part test:

> The threshold inquiry is whether the general employer controlled the special
> employee. By "control," we mean control in the fundamental respondeat superior
> sense, which was described recently as "the right to direct the manner in which the
> business shall be done, as well as the result to be accomplished, or in other words,
> not only what shall be done, but how it shall be done."  In addition to evidence of
> direct or "on-spot" control "over the means by which the task is accomplished,"
> we will infer an employer's control based on the "'method of payment[,] who
> furnishes the equipment, and [the] right of termination.'"  The retention of either
> on-spot, or broad, control by a general employer would satisfy this first prong.  If
> a general employer is not found to exercise either on-spot, or broad, control over a
> special employee, then the general employer cannot be held vicariously liable for
> the alleged negligence of that employee. If the general employer did exercise such
> control, however, then it must be ascertained whether the special employee
> furthered the business of the general employer. A special employee is furthering
> the business of the general employer if "the work being done [by the special
> employee] is within the general contemplation of the [general employer,]"and the
> general employer derives an economic benefit by loaning its employee. If the
> answer to the second question is in the affirmative, the general employer may be
> held vicariously liable for the alleged negligence of a special employee.

<u>Id.</u> at 472-73 (internal citations omitted).  The court went on to note that its decision was not

solely driven by the corporate relationship between Robert and GHCC: "We add, also, that our

result is not solely a function of the corporate affiliation between GHCC and Robert, as has been

suggested by plaintiff. A general employer not affiliated with the special employer could be

relieved of liability under the business-furtherance test if it either "gratuitously" loaned the

special employee, or the special employee engaged in work outside the contemplation of the

general employer."  <u>Id.</u> at 474 (internal citation omitted).  As to whether <u>Galvao</u> can be applied in

the context of public entities, Edison Township relies on <u>McIntosh v. De Filippo</u>, 281 N.J. Super.

171 (N.J.Super.App.Div. 1995).  <u>McIntosh</u> involved a dispute between a member of a borough

-16-

FOR PUBLICATION

volunteer ambulance corps, a police officer of a neighboring township, and the township itself.

Pursuant to an agreement between the borough and the township, the township provided

emergency call reception and dispatching services to the borough.  While the primary issue in the

case was whether the volunteer and the police officer were fellow employees within the meaning

of the Workers' Compensation Act, the court also considered whether the township could be

vicariously liable for the police officer's actions:

> However, we are constrained to summarily reverse the summary judgment in
> favor of River Vale and remand the matter to the trial court for reconsideration in
> light of the Supreme Court's decision in <u>Volb v. G.E. Capital Corp.</u>, 139 N.J. 110,
> 651 A.2d 1002 (1995), which was handed down while this appeal was pending. In
> Volb, the Court, in reversing a summary judgment in favor of an employer, held
> that the employer was not entitled to immunity from tort liability for the alleged
> negligence of its employee which occurred while that employee functioned as a
> special employee of another, even though the employee was entitled to
> fellow-employee tort immunity under the Act.

<u>Id.</u> at 179.

The facts of the <u>McIntosh</u> case, its reference to the "special employee" situation in <u>Volb</u>,

and the <u>Galvao</u> court's resolution of the uncertainty created by <u>Volb</u> suggest that the "special

employee" situation is not limited to only private corporations as the State would have this Court

declare.  Here, Edison Township is a general employer which loaned its employee Abrams to the

MCPO to work on the task force.  Applying the <u>Galvao</u> test for vicarious liability, the Court first

considers whether Edison controlled special employee Abrams.  The undisputed facts show that

Edison did not have the right to direct Abrams's actions when he was working on the task force,

and it did not have the right to control or supervise Abrams's investigation of Hemenway.  The

facts also show that although Edison paid Abrams's salary, Edison was reimbursed by the MCPO

-17-

**FOR PUBLICATION**

for a portion of his salary.  As the facts do not support a finding of either on-spot, or broad,

control by Edison, the first prong of the <u>Galvao</u> test is not satisfied.  Thus, Edison cannot be held

vicariously liable for Abrams's actions under the <u>Galvao</u> test.[2]  For the foregoing reasons,

Edison's motion for partial summary judgment is granted.

**CONCLUSION**

The State of New Jersey's motion is GRANTED without prejudice; Abrams's cross-

motion is DENIED; and Edison Township's motion is GRANTED.


<u>s/William H. Walls</u>
United States District Judge

---

[2] The Court's finding that Edison is not vicariously liable is limited to just that and does not mean that the State may be held vicariously liable for Abrams's actions should an action against the State be initiated in state court.

**FOR PUBLICATION**

**Appearances**

Mark Berman
Jennifer A Hradil
Gibbons, Del Deo, Dolan, Griffinger & Vecchione
One Riverfront Plaza
Newark, NJ 07102-5496

Ellen M. Hale
Attorney General's Office
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112

Steve Mannion
DeCotiis, Fitzpatrick Cole & Winsler, LLP
Glenpointe Centre West
500 Frank W. Burr Boulevard
Teaneck, NJ 07666

Patrick J. Bradshaw
Kelso & Bradshaw
132 Hamilton Street
P.O. Box 1208
New Brunswick, NJ 08901

Linda G. Harvey
Michael H. Freeman
Greenberg, Dauber, Epstein & Tucker
One Gateway Center, Suite 600
Newark, NJ 07102-5311

Alan J. Baratz
Adam Kenny
Weiner Lesniak, LLP
629 Parsippany Road
P.O. Box 438
Parsippany, NJ 07054-0438

Lori A. Dvorak
Lynch Martin
1368 How Lane

**FOR PUBLICATION**

P.O. Box 6022
North Brunswick, NJ 08902