NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES TODD KELLEY, | : |
| Plaintiff, | : **OPINION** |
| v. | : Civ. No. 03-4817 (WHW) |
| EDISON TOWNSHIP, MIDDLESEX COUNTY PROSECUTOR'S OFFICE, DET. FRED LACIK, II, LT. MICHAEL PALKO, DET. JEFF ABRAMS, SGT. CHRIS ENGRAM, PTLM. JEFF DIAKUNCZAK, PTLM. BRIAN MIECKOWSKI, | : |
| Defendants. | : |
| DET. JEFF ABRAMS, et al. | : |
| Third Party Plaintiff, | : |
| v. | : |
| STATE OF NEW JERSEY, | : |
| Third Party Defendant. | : |

**Walls, District Judge**

Defendants Middlesex County Prosecutor's Office and Sergeant Chris Engram have moved moved to dismiss plaintiff James Todd Kelley's remaining claims against the Middlesex County Prosecutor's Office. The motion is decided without oral argument pursuant to Fed. R. Civ. P. 78.

**FACTS AND PROCEDURAL BACKGROUND**

**NOT FOR PUBLICATION**

The facts of this case have been recited at length in two previous decisions of this court: Kelley v. Edison Twp., 377 F. Supp. 2d 478 (D.N.J. 2005) ("Kelley I"), and Kelley v. Edison Twp., No. 03-4817, slip op. at 1 (D.N.J. July 19, 2005) ("Kelley II"). The following is a brief summary of the relevant facts:

In October of 2002, defendant Detective Jeff Abrams ("Abrams"), a police officer in Edison Township, New Jersey ("Edison"), was temporarily assigned to the Middlesex County Narcotics Task Force, an investigative arm of the Middlesex County Prosecutor's Office (the "MCPO"). The MCPO reimbursed Edison for a portion of Abrams's salary. On the morning of October 30, 2002, Abrams received information from a confidential informant that James Hemenway ("Hemenway") was going to be in possession of, and would sell at least five ounces of cocaine that evening. Abrams thereafter became responsible for coordinating the investigation of Hemenway. Abrams learned that the sale was to occur at the Ramada Inn in Edison, and proceeded to coordinate with the Edison police department to set up surveillance at the hotel. He also worked with Sergeant Chris Engram ("Engram"), an employee of the MCPO.

Plaintiff James Todd Kelley ("plaintiff" or "Kelley") drove into the hotel parking lot and was immediately identified by the surveillance teams. Because the plaintiff and his white van allegedly met the description of the suspect, Abrams and Edison Detective Fred Lacik approached the vehicle in their unmarked car. One of the detectives got out of their car and approached plaintiff's van yelling that he was a police officer. Plaintiff claims that he was unable to hear what the detective was yelling. Rather, he thought he was being car jacked. Plaintiff sped out of the parking lot and a police chase ensued, with three unmarked police cars

**NOT FOR PUBLICATION**

and one marked Edison police car following plaintiff's vehicle.  Defendants testified that they engaged the lights and sirens on the unmarked vehicles, but plaintiff claims that he did not see or hear any such lights or sirens.

After several minutes of pursuit, plaintiff's vehicle apparently got stuck in a muddy area of a grass median between the east and westbound lanes on Route 514.  The uniformed officers were the first to reach plaintiff's vehicle and yelled for the plaintiff to show his hands.  Plaintiff did not comply with the officers' directions and was forcibly removed from his van by one of the uniformed officers.  Once removed from the van, the officers determined that plaintiff was not the suspect for whom surveillance had been established.

Engram and Abrams returned to their respective vehicles and drove back to the Ramada Inn to resume their surveillance.  Within 30 minutes of their return, the intended suspect, Hemenway, was identified and arrested.  Meanwhile, Edison Patrolmen Jeff Diakunczak and Brian Mieckowski had remained at the scene with plaintiff and placed him in the back of their patrol car.  Plaintiff was later placed under arrest and was taken by the officers to their police headquarters where he was charged with eluding.  He was released without bail, and the charges against him were later dropped.

On October 9, 2003, plaintiff filed a complaint, later amended on July 1, 2004, alleging both federal and state law claims against Edison, the MCPO, Lacik, Lt. Michael Palko, Abrams, Engram, Diakunczak, and Mieckowski.  Plaintiff complains that his rights were violated pursuant to 42. U.S.C. § 1983, alleging false arrest, false imprisonment, excessive use of force, and

**NOT FOR PUBLICATION**

malicious prosecution. He also alleged state law claims for intentional and negligent infliction of emotional distress, assault and battery, malicious prosecution, and false arrest and imprisonment.

After the complaint was filed, on March 29, 2004, Counsel for Middlesex County sent a letter to the Attorney General for the State of New Jersey requesting representation for Abrams. By letter dated April 7, 2004, the request was denied. On July 22, 2004, after the MCPO and Engram were added as defendants, Counsel for Middlesex County requested representation for the MCPO from the Attorney General. Before the Attorney General responded, the MCPO, Engram and Abrams filed an answer, cross-claim and third-party complaint against the State of New Jersey. The third-party complaint states claims for contribution, indemnification, and requests that the State of New Jersey defend and indemnify the MCPO, Engram and Abrams, pursuant to <u>Wright v. State of New Jersey</u>, 169 N.J. 422 (2001) and the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq. (the "NJTCA"). On September 8, 2004, the Attorney General informed Counsel for Middlesex County that representation would be provided for the MCPO and for Engram, but not for Abrams.

In December of 2004, the State moved under Fed.R.Civ.P. 12(b)(6) to dismiss the third-party complaint against it on the grounds that: (1) the third-party claims against the State are barred by the Eleventh Amendment, and (2) the State is neither obligated to defend and indemnify Abrams, nor could it be held vicariously liable for Abrams's conduct. While the State agreed to provide a defense and indemnification to Engram and the MCPO with regard to Engram's conduct, the state refused to defend and indemnify Abrams, who was a municipal employee on loan to MCPO from the Edison Police Department. The State's reasoning for

-4-

**NOT FOR PUBLICATION**

refusing to defend and indemnify Abrams was that "[n]othing in Wright v. State, 169 N.J. 422 (2001), compels the conclusion or supports the proposition that the State is required to defend employees of local police departments working with a county' prosecutor's office." (State of New Jersey's Motion to Dismiss the Third-Party Complaint at p. 10). Rather, the State argued that under Township of Edison v. Hyland, 156 N.J. Super. 137 (App. Div. 1978), the State is not liable for the defense and indemnification of municipal police officers who have been assigned to work for a county prosecutor's task force. According to the State, Wright expressly distinguished prosecutorial employees from municipal employees in holding that the State could be liable for the conduct of the former in performance of law enforcement functions, but not of the latter.

In January of 2005, defendant Edison filed its opposition to the State's motion to dismiss and moved for partial summary judgment dismissing all claims for vicarious liability asserted against it based on Abrams' conduct. Edison argued that Abrams, while assigned to MCPO, acted as an agent and "special employee" of the State by virtue of his assignment to MCPO. Characterizing itself as Abrams's "general employer," Abrams as a "special employee," and MCPO as Abrams's "special employer," Edison argued that the issue of whether a general employer could be held vicariously liable for the actions of a special employee loaned to special employer was governed by the New Jersey Supreme Court's decision in Galvao v. G.R. Robert Construction Co., 179 N.J. 462 (2004).

Edison argued that under Galvao, the issue turned on whether the Township had "broad influence" over the Hemenway investigation or "on-spot control" over Abrams' conduct in

-5-

**NOT FOR PUBLICATION**

performing his investigatory role. Because it possessed neither, Edison contended that it could not be held vicariously liable for Abrams' conduct. Rather, according to Edison, the MCPO (and the State by virtue of its relationship with MCPO) controlled Abrams' performance of his duties and as a result could be held vicariously liable for Abrams' conduct. Edison added that under Wright, the State had a duty to indemnify Abrams because he was investigating and enforcing the State's criminal laws.[1] The State countered that Galvao did not extend to public employees and public entities nor extend Wright to render the State vicariously liable for the law enforcement functions involving municipal employees.

On July 19, 2005, this Court filed its Opinion resolving the State of New Jersey's motion to dismiss the third-party complaint, Edison's motion for partial summary judgment on the issue of vicarious liability with respect to Abrams, and Abrams's cross-motion for summary judgment on the third-party complaint. The motions were consolidated in a single opinion because they all addressed the issue of which party was liable for Abrams's conduct and responsible for the costs of his defense. Kelley I, 377 F.Supp.2d at 482. This Court granted the State of New Jersey's motion to dismiss the third-party complaint, and denied Abrams's cross-motion for summary judgment on the third-party complaint, reasoning that the claims asserted against the State of New Jersey were barred by the Eleventh Amendment. The third-party complaint was dismissed without prejudice, however, so that Abrams could re-file his claims in state court. Because this Court ruled that Abrams's claims against the State of New Jersey were barred by the Eleventh

---

[1] On January 28, 2005, Abrams cross-moved for summary judgment against the State on the third-party complaint, relying on the papers filed by Edison.

**NOT FOR PUBLICATION**

Amendment, this Court did not rule on the State of New Jersey's other arguments in support of dismissal.  Kelley I, 377 F.Supp.2d at 484.

As to the question of whether Edison could be held vicariously liable for Abrams, this Court rejected the approach to vicarious liability explained by Wright, and instead adopted Galvao's traditional control test.  This Court considered whether Edison controlled Abrams, and found it undisputed "that Edison did not have the right to direct Abrams's actions when he was working on the task force, and [Edison] did not have the right to control or supervise Abrams's investigation of Hemenway."  Kelley I, 377 F.Supp.2d at 487.  Moreover, the facts showed that "although Edison paid Abrams's salary, Edison was reimbursed by the MCPO for a portion of his salary."  Id. at 487-88.  The facts did not support a finding of either "on-spot" or broad control by Edison, and the first prong of Galvao was not satisfied.  For these reasons, this Court granted Edison's motion for partial summary judgment.

In addition to the motions that concerned vicarious liability for Abrams, this Court was asked to consider several other summary judgment motions filed by various parties, including a motion for summary judgment by MCPO, filed February 4, 2005.  MCPO argued that plaintiff could not sustain his § 1983 claims against it because plaintiff alleged no custom or policy of MCPO that resulted in a violation of plaintiff's constitutional rights.   MCPO also argued that, as to plaintiff's state law claims, a cause of action did not lie against MCPO because facts did not exist to support a cause of action against Engram.  MCPO did not raise any legal arguments with regard to the issue of whether the State of New Jersey or Edison is vicariously liable for

**NOT FOR PUBLICATION**

Abrams's conduct, except to simply state that it was only liable for Engram's actions. Kelley II, No. 03-4817, slip op. at 27-28.

Edison responded to MCPO's summary judgment motion, which asserted that the MCPO was only responsible for Engram's conduct. Edison argued that Abrams was under Engram's supervision at all relevant times, and added that if there is any liability established arising out of Abrams's conduct, "any tort claims or Monell liability is the responsibility of the [MCPO] and therefore the responsibility of the State of New Jersey."[2] (Edison's Opp. to MCPO's Motion for Summary Judgment at ¶ 1). MCPO did not address whether it was vicariously liable for Abrams in its reply, but merely reiterated that it was only responsible for Engram's conduct.

This Court granted summary judgment to MCPO on the § 1983 claims, finding that an isolated incident of alleged misconduct does not amount to municipal liability. Kelley II, No. 03-4817, slip op. at 12. With respect to the state law claims, this Court granted summary judgment for MCPO on the negligent and intentional infliction of emotional distress claims, but granted in part and denied in part the motion on the assault and battery, malicious prosecution, and the false arrest and false imprisonment claims. Specifically, summary judgment was denied with respect to MCPO's vicarious liability for Abrams.

Defendants MCPO and Engram now move to dismiss the plaintiff's remaining claims against the MCPO on the grounds that the MCPO, as a matter of law, cannot be held vicariously liable for Abrams. Alternatively, MCPO and Engram argue that the Eleventh Amendment bars

---

[2]Edison also incorporated the arguments it made in opposition to the State's motion to dismiss the third-party complaint, and statements it made in support of its own motion for summary judgment.

**NOT FOR PUBLICATION**

the plaintiff's suit against the MCPO. Plaintiff opposes the motion on the grounds that MCPO is not immune under the Eleventh Amendment, and because the issue of MCPO's vicarious liability as to Abrams has already been decided by this Court. Edison has joined the plaintiff's opposition to the motion.

### STANDARD

The motion addressed here implicates the standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim, and for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(6); Fed.R.Civ.P. 12(b)(1). On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n. 2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint,

**NOT FOR PUBLICATION**

and matters of public record.  See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

Unlike a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), in a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), no presumption of truthfulness attaches to the allegations in the complaint and the court may consider matters outside the pleadings such as affidavits and other material properly before the court. Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999). In a Rule 12(b)(1) motion, "the Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case." Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc., 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Federal Savings & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891.  The plaintiff must not only demonstrate that a controversy existed at the time it filed suit but that it continues to exist throughout the litigation.  Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3d Cir. 1992).  A motion to dismiss for lack of subject matter jurisdiction predicated on the legal insufficiency of a claim may be granted if the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." Gould Electronics Inc. v. US, 220 F.3d 169, 178 (3d Cir. 2000) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1408-09 (3d Cir. 1991).

**NOT FOR PUBLICATION**

## DISCUSSION

The Court will begin by considering MCPO's claim of Eleventh Amendment immunity, since a resolution of this issue in their favor would obviate the need to consider whether MCPO is subject to vicarious liability for Abrams's conduct.  MCPO argues that plaintiff's claims against it are barred by the Eleventh Amendment to the United States Constitution.   Plaintiff counters that MCPO is not entitled to the protections of the Eleventh Amendment as a matter of law, and even if it were, MCPO has waived its Eleventh Amendment Immunity by its affirmative action in this litigation.

The Eleventh Amendment prohibits the naming of a state or state agency as a party in federal court against which money damages are sought unless the state waives its immunity or consents to the suit.  Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).  "The breadth of state sovereign immunity protects not only states, but expands to protect entities and persons who can show that, even though the State is not the named defendant, 'the state is the real, substantial party in interest.'" Bennett v. City of Atlantic City, 288 F.Supp.2d 675, 679 (D.N.J. 2003) (citing Ford Motor Co. v. Dep't of Treasury, 323 U.S. 459, 464 (1945)).
 The state is the real party in interest whenever " 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' " Pennhurst State School, 465 U.S. at 101 n. 11 (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)).  To determine whether an entity is an arm of the state and, as a result, entitled to Eleventh

**NOT FOR PUBLICATION**

Amendment immunity, the Court must consider the following three factors: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001) (citing Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (en banc)). These are known as the Fitchik factors. "A party asserting Eleventh Amendment immunity bears the burden of proving its applicability." Chisolm, 275 F.3d at 323 (citation omitted). Although no single factor is dispositive, the Third Circuit has held that "the most important factor is whether a judgment resulting from the suit would be paid from the state treasury." Id.

      With respect to the that factor, the MCPO argues that all funds for any judgment obtained by the plaintiff against it would be paid by the State of New Jersey. In support of this point, MCPO first notes that under Wright, the Supreme Court of New Jersey found that the State was obligated to indemnify the county prosecutor's office for law enforcement duties. MCPO also notes that the State is providing a defense and is indemnifying both the MCPO and Engram regarding all matters in this case.

      Plaintiff correctly points out, however, that in July of 2005, this Court specifically declined to rule on the issue of whether the State could be liable for the conduct of Abrams. Kelley I, 377 F. Supp. 2d at 484. Rather, this Court ruled that the claims asserted against the State in the third-party complaint were barred by the Eleventh Amendment, and dismissed those claims without prejudice so that Abrams could re-file in state court. Id. at 485. Nevertheless, plaintiff argues that under Wright, the County of Middlesex, rather than the State, bears the

**NOT FOR PUBLICATION**

financial burdens of MCPO. Wright, 169 N.J. at 446 ("the financial burdens of the prosecutor's office are imposed on the county") (quoting Hyland, 156 N.J. Super. at 141 (citing Dunne v. Fireman's Fund Am. Ins. Co., 69 N.J. 244, 248-251 (1976))).

In Kelley I, this Court elected to not determine the issue of whether the State was liable to the County. Rather, the third-party complaint was dismissed without prejudice so that Abrams could re-file in a state court for a determination of that issue. The issue of whether the state or county will pay any judgment against Abrams is now before a state court. Consequently, that factor will not now be evaluated by this Court.

The second Fitchik factor requires this court to determine whether New Jersey state law treats the MCPO as independent or as a surrogate for the state. Fitchik, 873 F.2d at 662. Defendant argues that, as a matter of law, when a prosecutor's office is acting in an investigatory capacity, it is acting as an agent for the state. The basis for this point is a statement from Wright, in which the New Jersey Supreme Court noted:

> when prosecutors perform their law enforcement function, they are discharging a State responsibility that the Legislature has delegated to the county prosecutors, N.J.S.A. 2A:158-4 ("[t]he criminal business of the state shall be prosecuted by the Attorney General and the county prosecutors"), subject to the Attorney General's right to supersede.

Wright, 169 N.J. at 451-52 (citing N.J.S.A. 52:17B-106). MCPO adds that the New Jersey Supreme Court instructed that the "legislative delegation, in combination with the Attorney General's supervisory authority and power to supersede, demonstrates that at its essence the county prosecutor's law enforcement function is clearly a state function." Id. at 452. The opinion later goes on to say that when county prosecutors and their subordinates act in their law

-13-

**NOT FOR PUBLICATION**

enforcement/investigatory capacity, "they act as 'agents' and 'officers' of the State...." Id. MCPO argues that this has long been the law of New Jersey.

As with the first prong of the Fitchik test, plaintiff argues that this Court cannot decide this issue because the issue the duties and obligations of the State with respect to Abrams are unresolved, as well as MCPO's status under state law with respect to Abrams. That argument does not apply to the second Fitchik factor. Whereas the first prong is dependent upon Abrams, the second prong is not. The first prong asked this Court to determine whether the State or the County would pay for a judgment against the MCPO if Abrams was found liable. This Court elected to not make that determination, because in Kelley I, this Court deferred that question to the State courts. The second prong of Fitchik, on the other hand, simply asks this Court to determine whether the MCPO is independent or a surrogate of the state. This prong is not dependent upon Abrams. New Jersey statutes and case law, advanced by the MCPO, make clear that the County prosecutor's office is really an arm of the state. The second Fitchik factor weighs in favor of immunity.

The third and final factor asks this Court to determine the MCPO's degree of autonomy from the State. MCPO argues that it is at all time subject to the power of the Attorney General and consequently does not have autonomy from state regulation. Specifically, County prosecutors are not autonomous when involved in the state function of investigation and enforcement of criminal laws. They add that when enforcing the laws of the State, they are answerable to the Attorney General and the Attorney General has the power to supersede county prosecutors. N.J.S.A. 52:17B-112 states that "[i]t shall be the duty of the several county

**NOT FOR PUBLICATION**

prosecutors to cooperate with and aid the Attorney General in the performance of their respective duties." N.J.S.A. 52:17B-112.  N.J.S.A. 52:17B-103 also states the following:

> The Attorney General shall consult with and advise the several county prosecutors in matters relating to the duties of their office and shall maintain a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State. He may conduct periodic evaluations of each county prosecutor's office including audits of funds received and disbursed in the office of each county prosecutor.

N.J.S.A. 52:17B-103.  MCPO cites additional portions of the statute which show that the Attorney General has the authority to supersede the county prosecutor with respect to criminal actions and investigations.  N.J.S.A. 52:17B-106; N.J.S.A. 52:17B-107(a).  The New Jersey Supreme Court added in Wright that "the county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General."  Wright, 169 N.J. at 452.  Although plaintiff contends that the Attorney General's power to supersede the MCPO is limited and the MCPO is in many respects autonomous, there can be little debate that when it comes to enforcement of State laws, the county prosecutor's office is subordinate to the Attorney General and is, effectively, an arm of the State.  The third prong weighs in favor of immunity.

Having considered the Fitchik factors, this Court concludes that when the MCPO performs its duty of enforcing state laws, it is functioning as an arm of the state.  As a result, the State of New Jersey is the real party in interest, and the plaintiff's claims against the MCPO are barred by the Eleventh Amendment.

-15-

**NOT FOR PUBLICATION**

Plaintiff argues that even if the Eleventh Amendment applies, MCPO has waived its Eleventh Amendment immunity by the affirmative actions it has taken in litigating this case in federal court.  Plaintiff notes that the MCPO has filed a cross-claim for indemnification against defendants Edison, Lacik, Palko, Diakunczak, and Mieckowski, and has also filed a third-party complaint for indemnification and contribution against the State of New Jersey.  They cite several cases where the courts have found that the filing of cross-claims and third-party claims effects a waiver of Eleventh Amendment immunity.  See Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority, 744 F.2d 880, 886 (1st Cir. 1984) (declaring that where defendant "not only appeared but filed a counter-claim and a third-party complaint, we have little trouble concluding that [defendant] voluntarily submitted to the jurisdiction of the federal court, thereby waiving any Eleventh Amendment immunity it may or may not have enjoyed"); Newfield House, Inc. v. Mass. Dep't of Pub Welfare, 651 F.2d 32, 36 n. 3 (1st Cir. 1981) ("pressing a counterclaim in federal court present[s] a far clearer case of waiver than does a mere appearance"); Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., 625 F.2d 22, 22 n.6 (5th Cir. 1980) ("Of course the Eleventh Amendment is inapplicable where a state is a plaintiff...."); Unix System Labs., Inc. v. Berkely Software Design, Inc., 832 F.Supp. 790, 801 (D.N.J. 1993) (reasoning that because State "has not counterclaimed, filed a third-party complaint, removed to federal court, ore even answered," it had not acted as an affirmative participant and Edison had not waived Eleventh Amendment immunity).  Plaintiff adds that particularly with respect the third-party claims, the MCPO has invoked this Court's jurisdiction to adjudicate its claims that it was entitled to indemnification and contribution from the State for Abrams's conduct.

**NOT FOR PUBLICATION**

The Court cannot accept the plaintiff's argument.  When considering whether a party has waived their Eleventh Amendment immunity, waiver of that right must be construed in favor of the holder of that right.  <u>Pennhurst State School</u>, 465 U.S. at 99.  Courts "are instructed to 'indulge every reasonable presumption against waiver' of sovereign immunity."  <u>M.A. on behalf of E.S. v. State-Operated School Dist. of the City of Newark</u>, 344 F.3d 335, 345 (3d Cir. 2003) (citation omitted).  The MCPO did not voluntarily enter into this litigation.  Moreover, when the MCPO answered in August of 2004, it specifically included two defenses challenging the jurisdiction of this Court to hear the matter.  (See MCPO's Answer and Separate Defenses at ¶¶ 52, 53).  With respect to MCPO's third-party complaint against the State, this Court finds that it is best viewed as a defensive posture, to impute liability and indemnification costs to the state, as contrasted with an affirmative act of a defendant seeking relief.  <u>See</u> <u>CPC Int'l, Inc. v. Aerojet-General Corp.</u>, 764 F.Supp. 479, 481-82 (W.D. Mich. 1991) (defendant Michigan Department of Natural Resources did not waive Eleventh Amendment immunity defense when its claim for response cost and contribution was best viewed as a defensive posture rather than a claim for affirmative relief); <u>see</u> <u>also</u> <u>College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 948 F.Supp. 400, 414 (D.N.J. 1996) (plaintiffs waiver argument merited little discussion where defendant's acts were best viewed as those of a "beleaguered defendant" rather than those of an "active participant").  Plaintiff's cases are distinguished in that in those cases, the states sought some form of affirmative relief.  That is not the case here.  For these reasons, the Court cannot accept plaintiff's argument that MCPO has waived its Eleventh Amendment immunity.

**NOT FOR PUBLICATION**

Having concluded that plaintiff's claims against the MCPO are barred by the Eleventh Amendment, and that the MCPO has not waived its Eleventh Amendment immunity, this Court need not consider the MCPO's alternative argument for dismissal. The Court will dismiss the plaintiff's claims without prejudice in order that the plaintiff may pursue any remedies he may possess against the MCPO in state court.

## CONCLUSION

The motion of defendants MCPO and Engram are granted. The plaintiff's claims against the MCPO are dismissed without prejudice.

s/William H. Walls<br>
United States Senior District Judge